2015 CO 41

**COLORADO MEDICAL SOCIETY, a Colorado Nonprofit Corporation, and the Colorado Society of Anesthesiologists, a Colorado Nonprofit Corporation, Petitioners**

v.

**John HICKENLOOPER, in his official capacity as the Governor of Colorado, Respondent**

and

**Colorado Association of Nurse Anesthetists, Colorado Nurses Association, and Colorado Hospital Association, Intervenors–Respondents**

Supreme Court Case No. 12SC671

Supreme Court of Colorado.

June 1, 2015

Rehearing Denied June 22, 2015

Attorneys for Petitioner Colorado Medical Society: Martin Conklin P.C., John L. Conklin, Jerome R. Geraghty, Denver, Colorado

Attorneys for Petitioner Colorado Society of Anesthesiologists: Sherman & Howard L.L.C., Joseph J. Bronesky, Frederick Y. Yu, Denver, Colorado

Attorneys for Respondent: Cynthia H. Coffman, Attorney General, LeeAnn Morrill, First Assistant Attorney General, Matthew David Grove, Assistant Attorney General, Denver, Colorado

Attorneys for Intervenor–Respondent Colorado Association of Nurse Anesthetists: Miles & Peters, P.C., Fred Miles, Peggy Kozal, Denver, Colorado

Attorneys for Intervenor–Respondent Colorado Nurses Association: Caplan and Earnest LLC, W. Stuart Stuller, Linda L. Siderius, Boulder, Colorado

Attorneys for Intervenor–Respondent Colorado Hospital Association: Polsinelli PC, Gerald Niederman, Bennett L. Cohen, Denver, Colorado

Attorneys for Amici Curiae American Medical Association and American Society of Anesthesiologists, Gordon & Rees LLP, John R. Mann, Denver, Colorado

Attorneys for Amicus Curiae American Hospital Association, Hogan Lovells U.S. LLP, Christopher O. Murray, Denver, Colorado

Attorneys for Amici Curiae American Association of Nurse Anesthetists and American Nurses Association, Duane Morris LLP, Mark J. Silberman, Elinor L. Hart, Chicago, Illinois

Husch Blackwell, LLP, Jeffrey D. Whitney, Denver, Colorado

JUSTICE EID delivered the Opinion of the Court.

¶ 1 Under federal regulations, in order for hospitals, critical access hospitals, and ambulatory surgical centers to receive Medicare reimbursement, certified registered nurse anesthetists ("CRNAs") who administer anesthesia must do so under a physician's supervision. A state may opt out of this requirement, however, if its governor attests to the appropriate federal agency that he has consulted with the state's medical and nursing boards and has concluded that opting out of the requirement would be consistent with state law and in the state's best interest.

¶ 2 In 2010, then-Colorado Governor Bill Ritter, Jr. consulted with the state's medical and nursing boards and concluded that opting out of the supervision requirement would be consistent with state law and would be in the state's best interest. He sent notice of his conclusions to the federal agency and exercised the opt-out as to all critical access hospitals in Colorado and certain rural general hospitals. The petitioners, the Colorado Medical Society and the Colorado Society of Anesthesiologists, filed suit against the Governor, claiming that Colorado law does not permit CRNAs to administer anesthesia without supervision by a physician.

¶ 3 The Governor and three intervening medical associations (collectively, "the respondents") moved to dismiss the petitioners' complaint. Their motion argued that the petitioners lacked standing and that they failed to state a claim upon which relief can be granted. In ruling on the motion, the

trial court found that the petitioners had standing, but also determined that Colorado law does not require CRNAs to be supervised when they deliver anesthesia. The trial court therefore found that the petitioners failed to state a valid claim and granted the motion to dismiss. On review, the court of appeals agreed with the trial court's conclusions that the petitioners had standing but failed to state a claim for relief. *Colo. Med. Soc'y v. Hickenlooper*, 2012 COA 121, 353 P.3d 396. The petitioners now ask us to review the court of appeals' decision affirming the trial court's dismissal of their complaint.

¶ 4 We affirm the order of the court of appeals, but on different grounds. We agree that the petitioners have standing. However, we hold that, contrary to the assumption that has undergirded this case to this point, the Governor's attestation with regard to physician supervision of CRNAs is not a generally binding interpretation of Colorado law that is subject to *de novo* review. Instead, the attestation has a single effect— namely, to exempt Colorado's critical access hospitals, along with certain rural general hospitals in Colorado, from the federal supervision requirement. This decision, if reviewable at all, is reviewable only for a gross abuse of discretion. Because the petitioners do not allege that such a gross abuse occurred here, we affirm the decision of the court of appeals affirming dismissal of the petitioners' claims.

## I.

¶ 5 Federal regulations require hospitals, critical access hospitals, and ambulatory surgical centers to satisfy certain conditions in order to receive Medicare reimbursement. One such condition is that certified registered nurse anesthetists may administer anesthesia only under the supervision of a physician. 42 C.F.R. §§ 482.52 (hospitals), 485.639 (critical access hospitals), 416.42 (2014) (ambulatory surgical centers). These same regulations, however, also permit a state to opt out of this requirement if the state's governor submits a letter to the Department of Health and Human Services' Centers for Medicare and Medicaid Services

("the CMS") requesting an exemption. 42 C.F.R. §§ 482.52(c)(1), 485.639(e)(1), 416.42(c)(1). In this letter, the governor "must attest that he or she has consulted with the State Boards of Medicine and Nursing about issues related to access to and the quality of anesthesia services in the State and has concluded that it is in the best interests of the State's citizens to opt-out of the current physician supervision requirement, *and that the opt-out is consistent with State law.*" 42 C.F.R. §§ 482.52(c)(1), 485.639(e)(1), 416.42(c)(1) (emphasis added).

¶ 6 In 2010, then-Governor Bill Ritter, Jr. sent a one-page letter to the Colorado Medical Board and the Colorado Nursing Board ("the Boards") informing them that it was his "understanding that the Colorado Nurse Practice Act [§ 12–38–101 to –133, C.R.S. (2014)] allows CRNAs to practice without direct supervision from a physician." His letter then told the Boards that he intended to utilize the opt-out option for Colorado's rural and critical access hospitals "unless [their] respective boards provide[d] compelling arguments against such action." He therefore asked the Boards to address whether opting out of the supervision requirement would be consistent with state law and whether it would be in the best interest of Colorado residents. After considering the matter, the Boards responded to the Governor's questions, answering both of them in the affirmative.

¶ 7 Governor Ritter then sent a one-page letter to the CMS stating that he had consulted with the state's Medical and Nursing Boards and had determined that the opt-out was consistent with Colorado law and in the best interests of Colorado citizens. The letter then stated that Colorado would opt out of the supervision requirement for all critical access hospitals and thirteen specifically identified rural general hospitals. The Governor later added a fourteenth rural general hospital to the exemption.

¶ 8 On the day after Governor Ritter sent the opt-out letter to the CMS, the petitioners, acting on behalf of their physician and anesthesiologist members, initiated this action against him. In their complaint, they contend that the opt-out violates Colorado

law, which they claim requires that CRNAs administer anesthesia only under a physician's supervision.

¶ 9 Governor Ritter then filed a motion to dismiss the petitioners' complaint under C.R.C.P. 12(b)(1) and (5), arguing that the petitioners lacked standing and that their complaint failed to state a claim on which relief can be granted. The Colorado Hospital Association, Colorado Nurses Association, and Colorado Association of Nurse Anesthetists, who had intervened as defendants in the case, joined in the Governor's motion.[1]

¶ 10 In ruling on the motion, the trial court found that the petitioners had standing, but also determined that Colorado law does not prohibit the unsupervised delivery of anesthesia by a CRNA. The trial court therefore granted the motion to dismiss for failure to state a claim. On review, the court of appeals agreed that the petitioners had standing to challenge the opt-out after concluding that they had alleged tangible injuries to their medical licenses and reputations. *Colo. Med. Soc'y,* ¶¶ 24–26. The court also agreed, however, that Colorado law does not require physicians to supervise CRNAs as they administer anesthesia. *Id.* at ¶¶ 32–50. The court of appeals therefore affirmed the trial court's order dismissing the action. *Id.* at ¶ 57. The court also rejected the argument raised by the intervenor-respondent Colorado Hospital Association that the Governor's decision was not subject to judicial review, concluding that the requirements of the political question doctrine were not met. *Id.* at ¶¶ 11–14. Judge Furman concurred specially, taking the position that the petitioners lacked standing because the Governor has the "sole discretion to determine whether the

opt-out is . . . consistent with Colorado law." *Id.* at ¶ 73 (Furman, J., specially concurring)

¶ 11 The petitioners then petitioned this court for certiorari review of the court of appeals' decision.[2]

## II.

 ¶ 12 The Governor reprises his argument[3] that the petitioners lack standing to challenge his decision, and although he did not file a cross-petition asking us to review the court of appeals' standing determination, we have an obligation to address the standing issue before proceeding to the merits. *Hickenlooper v. Freedom from Religion Found., Inc.,* 2014 CO 77, ¶ 7, 338 P.3d 1002, 1006. In order to establish standing, a plaintiff must allege that he or she has suffered an injury to a legally protected interest. *Id.* at ¶ 8, 338 P.3d at 1006.

 ¶ 13 The petitioners claim that the Governor's opt-out decision has caused their members[4] to suffer various injuries, including harm to their medical licenses and reputations, decreased income, and harm to their ability to adequately serve patients. Although the Governor argues that these alleged injuries are too nebulous to confer individual standing, we conclude that they do not create the same sort of concerns that we have identified in the past—namely, that "the alleged injury is indirect and incidental to the defendant's conduct." *Hickenlooper,* ¶ 17, 338 P.3d at 1009.

¶ 14 In our recent *Hickenlooper* decision, for example, we concluded that the plaintiffs lacked individual standing to challenge the

---

1. Governor John Hickenlooper succeeded Governor Ritter before the trial court ruled on the motion. He thus assumed, in his official capacity, Governor Ritter's status as a defendant in this action.

2. We granted certiorari to review the following issue:

 Whether the Court of Appeals erred in determining that Colorado's Nurse Practice Act allows Colorado's Governor to request an exemption from the physician-supervision requirement under federal Medicare reimbursement regulations, so that a certified registered nurse anesthetist can administer anesthesia without physician supervision and

the facility can obtain Medicare reimbursement.

3. The intervenor-respondents the Colorado Association of Nurse Anesthetists, the Colorado Nurses Association, and the Colorado Hospital Association address only the merits of the petitioners' claim.

4. An association has standing to assert claims on behalf of their members where it alleges injuries to its members sufficient to confer standing. *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Governor's proclamation recognizing the Colorado Day of Prayer where they failed to allege "that they suffered any negative consequences at the hands of the government." *Id.* at ¶ 18, 338 P.3d at 1009. Here, by contrast, the petitioners allege that the Governor's opt-out decision has a direct and negative impact on their members' reputations, how they practice medicine, and their income. We agree with the court of appeals that these allegations are sufficient to meet the injury requirement. *See, e.g., Meese v. Keene,* 481 U.S. 465, 473, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987) (concluding that plaintiff had Article III standing where government action was alleged to have threatened his professional reputation); *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 344, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (concluding that state apple growers association had Article III standing where government action in another state was alleged to have caused loss of business to apple growers represented by the association).

■ ¶ 15 We also agree with the court of appeals that the petitioners' members have a legally protected interest in their medical licenses specifically, as well as the provision of medical services more generally, under the Medical Practice Act, sections 12–36–101 to – 202, C.R.S. (2014). Accordingly, we conclude that the petitioners have standing to bring an action challenging the Governor's opt-out decision.[5]

## III.

¶ 16 Both the trial court and the court of appeals treated the Governor's attestation that the opt-out is "consistent with state law" as a generally binding legal interpretation subject to *de novo* review. Dist. Op. at 2 ("The central issue in this case is whether the delivery of anesthesia by CRNAs without supervision by a physician is contrary to Colorado state law. This is a matter of interpretation of Colorado state law" to be

reviewed *de novo* by the court.); *Colo. Med. Soc'y,* ¶¶ 15, 30 (noting that petitioners "do not challenge the Governor's factual finding" that the opt-out is in the best interest of Colorado, but only his interpretation of Colorado law regarding physician supervision, which is subject to *de novo* review). The parties before us generally do so as well, arguing that Colorado law either does (in the case of respondents) or does not (in the case of petitioners) permit CRNAs to dispense anesthesia without physician approval.[6]

■ ¶ 17 We do not address this question. Instead, we conclude that the path this case has taken so far reflects a misunderstanding of the nature and effect of the Governor's attestation. The Governor's attestation is simply an expression of his opinion that the opt-out is "consistent with state law." It therefore has no force or effect outside the context in which it was made—namely, allowing the opt-out of Colorado critical access hospitals and certain Colorado rural hospitals from the physician supervision requirement imposed by federal regulation as a condition of Medicare reimbursement. It therefore is not a question of legal interpretation subject to *de novo* review.

¶ 18 The nature and effect of the Governor's attestation is made clear by the CMS guidelines themselves. The CMS expressly rejected proposals that would make the Governor's attestation something more than an expression of his legal opinion. For example, during the notice and comment period, the CMS stated: "We recognize there is a difference of opinion of those parties on both sides of [the physician supervision] issue, regarding what State law is, *but we believe the governors are best suited to make determinations in this area.*" Medicare and Medicaid Programs; Hospital Conditions of Participation: Anesthesia Services, 66 Fed.Reg. 56,762, 56,764 (Nov. 13, 2001) (emphasis added). Based on this belief, the CMS rejected requests that it provide "procedural safe-

---

5. The Governor briefly argues that the petitioners lack standing because federal law does not establish a mechanism to challenge the Governor's opt-out decision. This argument goes to whether and to what extent his decision is reviewable, an issue we address in Part III below.

6. Intervenor-respondent the Colorado Hospital Association briefly argues that the court of appeals' decision may be affirmed on the alternative ground that the Governor's attestation is subject to minimal or no review.

guards to ensure that the State governors, in their exercise of their discretion, would observe existing State law in regards to physician supervision," including a proposal that would have required a governor to obtain a legal opinion from the state's attorney general regarding state law. *Id.* at 56,765. The CMS could not have been more clear: the attestation requirement is a governor's assessment of state law, nothing more. *See id.* at 56,766 (stating that the "overarching principle is that the governor has the authority to act *according to his or her assessment* of the needs and safety of the citizens of that particular State") (emphasis added).

¶ 19 As such, the Governor's attestation with regard to physician supervision of CRNAs is not a generally binding interpretation of Colorado law. Instead, the attestation has a single effect—namely, to exempt Colorado's critical access hospitals, along with certain rural general hospitals in Colorado, from the federal supervision requirement. *See Colo. Med. Soc'y,* at ¶ 66 (Furman, J., specially concurring) ("I note that the Governor's opt-out has no bearing on the legal standards governing who may administer anesthesia or under what circumstances anesthesia may be administered. These standards are defined by Colorado law."); *Cal. Soc'y of Anesthesiologists v. Superior Court,* 204 Cal.App.4th 390, 138 Cal.Rptr.3d 745, 749 (2012) ("The Governor's opt-out decision merely gives California facilities the option of using CRNA's to administer anesthesia without physician supervision without jeopardizing their Medicare reimbursements."). Accordingly, it is not a question of legal interpretation subject to *de novo* review. We thus disagree with the court of appeals' decision to the extent that it considered whether, as a matter of *de novo* interpretation, Colorado law permits CRNAs to administer anesthesia without supervision. *Colo. Med. Soc'y,* ¶¶ 32–56.

¶ 20 The question then becomes whether the Governor's assessment of Colorado law is subject to *any* review. Plainly there is no review by the CMS. Federal regulations make the opt-out "effective upon submission." 42 C.F.R. §§ 482.52(c)(2), 485.639(e)(2), 416.42(c)(2). The Governor's

attestation is thus "accepted on face value, with no independent CMS scrutiny or analysis of the governor's underlying rationale." 66 Fed.Reg. at 56,766. Indeed, it could be argued that the nature of the CMS process suggests that the Governor's attestation is entirely unreviewable. *Cf. Colo. Med. Soc'y,* ¶¶ 73, 77 (noting that the Governor has "the sole discretion to determine whether the opt-out is in the bests interests of Colorado's citizens and consistent with Colorado law") (Furman, J., specially concurring).

¶ 21 The only case cited by the parties that has addressed this issue concluded that the governor's decision is reviewable only by mandamus, and reversible only if he acted in a "palpably unreasonable and arbitrary manner as to indicate an abuse of discretion as a matter of law." *Cal. Soc'y of Anesthesiologists,* 138 Cal.Rptr.3d at 751 (internal quotation marks and citation omitted). Our caselaw suggests that mandamus cannot control the "manner in which ... discretion is to be exercised," but "will lie when action has been taken arbitrarily or if it reflects *a gross abuse of discretion.*" *Peoples Natural Gas v. Pub. Utils. Comm'n,* 626 P.2d 159, 162 (Colo.1981) (emphasis added).

¶ 22 We need not decide in this case, however, whether the Governor's attestation is reviewable for a "gross abuse of discretion" or is entirely unreviewable. Even assuming the Governor's attestation is reviewable for a gross abuse of discretion, the petitioners do not allege that such a gross abuse occurred here. Instead, they allege that the Governor (and the trial court and court of appeals) simply misinterpreted Colorado law on the subject. That is insufficient to maintain a claim for mandamus. *State v. Peck,* 92 Colo. 224, 19 P.2d 217, 229 (1933) ("Mandamus will not lie to compel ... [an exercise of] ... discretion in a particular way."). Accordingly, the trial court properly dismissed the petitioners' claims. We therefore affirm, albeit on different grounds, the decision of the court of appeals affirming dismissal of the petitioners' claims.

## IV.

¶ 23 For the foregoing reasons, we affirm the decision of the court of appeals.

JUSTICE MÁRQUEZ does not participate.