OSCN Found Document:Question Submitted by: Representative Marcus McEntire, Oklahoma House of Representatives, District 50

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: Representative Marcus McEntire, Oklahoma House of Representatives, District 50
2024 OK AG 14
Decided: 09/27/2024
Oklahoma Attorney General Opinions

Cite as: 2024 OK AG 14, __ __

 

¶0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following questions:
1. Did the Governor's decision to exempt the State from Medicare's "physician-supervision requirement" modify the relationship between a physician and a certified registered nurse anesthetist ("CRNA") as defined by the Oklahoma Nursing Practice Act ("Nursing Act")? 2. Does the Nursing Act allow CRNAs to practice independently from a collaborating physician licensed by the State of Oklahoma?
3. Does the Nursing Act require the collaborating physician to oversee a patient's treatment plan by remaining onsite for timely oversight and consultation during the delivery of anesthesia?
I.
SUMMARY
¶1 First, the Governor's request for exemption letter did not modify the physician-CRNA relationship in Oklahoma. Oklahoma law governs the relationship between physicians and CRNAs. Second, Senate Bill 801, 2020 Okla. Sess. Laws ch. 11, § 1 ("SB 801"), which amended the Nursing Act, did not open the door for CRNAs to practice independently from a collaborating physician. To practice, the CRNA must operate under a collaboration agreement as described in title 59 section 567.3a(10)(h). Third, due to SB 801's shift from supervision to collaboration, collaborating physicians are no longer required to oversee CRNAs. As a result, a 2012 opinion, 2012 OK AG 21(the "2012 Opinion") of this office is now partially withdrawn. Fourth and finally, SB 801 continues to require physicians working with CRNAs to be available for timely onsite consultation.

II.
BACKGROUND
¶2 Pursuant to title 42, section 482.52(a)(4) and (c)(1) of the Code of Federal Regulations, the Governor submitted a letter[1] ("Governor's Letter") to Administrator Seema Verma for the Centers for Medicare and Medicaid Services on November 20, 2020, requesting an exemption from physician supervision of CRNAs providing anesthesia services in the state.[2] Under section 482.52(c)(1), the Governor's Letter "must attest that he or she has consulted with [the] State Boards of Medicine and Nursing about issues related to access to and the quality of anesthesia services in the State and has concluded that it is in the best interests of the State's citizens to opt-out of the current physician supervision requirement, and that the opt-out is consistent with State law." 42 C.F.R. § 482.52(c)(1) (2008). The Governor's Letter fulfilled the requirements of title 42, section 482.52(c) of the Code of Federal Regulations. In the letter, the Governor attested that he discussed the supervision requirement with the State Boards of Nursing and Medical Licensure and Supervision, and he then demonstrated the exemption's congruity with state law by highlighting the recent passage of SB 801, which eliminated the supervision requirement in the Nursing Act. On submission, the Governor's request for exemption became effective. Id. § 482.52(c)(2).
¶3 Prior to SB 801's enactment, the Nursing Act required CRNAs administering anesthesia in Oklahoma to be under the supervision of a physician. 59 O.S.2011 § 567.3a(10). On becoming law, SB 801 shifted anesthesia nursing practice from supervision to collaboration. Now, section 567.3a(10), in pertinent part, states:
[A] "Certified Registered Nurse Anesthetist" is an Advanced Practice Registered Nurse who . . . administers anesthesia in collaboration with a medical doctor, an osteopathic physician, a podiatric physician or a dentist licensed in this state and under conditions in which timely onsite consultation by such doctor, osteopath, podiatric physician or dentist is available . . . A Certified Registered Nurse Anesthetist, in collaboration with a medical doctor, osteopathic physician, podiatric physician or dentist licensed in this state, and under conditions in which timely, on-site consultation by such medical doctor, osteopathic physician, podiatric physician or dentist is available, shall be authorized pursuant to rules adopted by the Oklahoma Board of Nursing, to order, select, obtain and administer legend drugs, Schedules II through V controlled substances, devices, and medical gases only when engaged in the preanesthetic preparation and evaluation; anesthesia induction, maintenance and emergence; and postanesthesia care. A Certified Registered Nurse Anesthetist may order, select, obtain and administer drugs only during the perioperative or periobstetrical period. 
59 O.S.2021, § 567.3a(10)(a)(2), (b) (emphasis added). From the changes to the Nursing Act and considering the Governor's exemption letter to Administrator Verma, this office is asked (1) how, if at all, the Governor's action modified the physician-CRNA relationship and (2) the extent to which SB 801 relaxed such relationship.

III.
DISCUSSION
A. Oklahoma's Nursing Act governs the physician-CRNA relationship.
¶4 The Nursing Act governs the practice of nursing in Oklahoma. In fact, the Nursing Act prohibits any person from practicing or offering to practice any type of nursing if he or she has not complied with the act. 59 O.S.2021, § 567.14(A). Nursing education, certification licensure, and practice "affect the public health, safety and welfare and, in the public interest, [are] therefore subject to regulation and control by the Oklahoma Board of Nursing." Id. § 567.2(A)(1). Title 59, section 567.5a of the Oklahoma Statutes establishes licensure requirements for advanced practice registered nurses ("APRNs"), which is the umbrella term CRNAs fall under. Section 567.5a(B) requires CRNA licensure applicants to complete necessary education and training, obtain certification recognized by the Oklahoma Board of Nursing, possess a registered nurse license, and submit to a criminal background check, among other prerequisites to licensure. The Board of Nursing also reviews applications for APRNs seeking prescriptive authority. Id. § 567.5a(D).
¶5 In contrast, the relevant federal regulation, 42 C.F.R. § 482.52, imposes a condition precedent on hospitals participating in Medicare and receiving federal reimbursement for providing anesthesia services.[3] The Code of Federal Regulations refers to these stipulations as conditions for participation. See generally 42 C.F.R. § 482 (2024). It also requires hospital personnel to be "licensed or meet other applicable standards that are required by State or local laws." 42 C.F.R. § 482.11(c) (2020). Consequently, the Governor's request to opt-out of the physician-supervision requirement for CRNAs under 42 C.F.R. § 482.52(b-c) did not modify the relationship between CRNAs and physicians but rather removed federal regulatory constraints affecting the application of SB 801. Withdrawal from the federal conditions of participation has no effect on the relationship between physicians and CRNAs with respect to Oklahoma law.

B. Oklahoma law does not permit a CRNA to practice independently from his or her collaborating physician.
¶6 While the Legislature did eliminate supervision from section 567.3a(10) in SB 801, it left no doubt that the physician-CRNA relationship should be retained. Prior to SB 801, the Legislature had not defined the term "supervision." However, the 2012 Opinion issued by this office construed "supervision," as used in section 567.3a(10), to require physician oversight of CRNAs. 2012 OK AG 21, ¶ 6. This office concluded that oversight meant a physician owed a duty to supervise the care of their patients, and that this duty required the physician to competently determine whether their physical presence was necessary based on the particular medical circumstances of each patient. Id.
¶7 Conversely, in SB 801, the Legislature added a new paragraph h to section 567.3a(10) to define collaboration and its contours as:
[A]n agreement between a medical doctor, osteopathic physician, podiatric physician or dentist performing the procedure or directly involved with the procedure and the Certified Registered Nurse Anesthetist working jointly toward a common goal providing services for the same patient. This collaboration involves the joint formulation, discussion and agreement of the anesthesia plan by both parties, and the collaborating medical doctor, osteopathic physician, podiatric physician or dentist performing the procedure or directly involved with the procedure and that collaborating physician shall remain available for timely onsite consultation during the delivery of anesthesia for diagnosis, consultation, and treatment of medical conditions.
59 O.S.2021, § 567.3a(10)(h) (emphasis added).
¶8 SB 801 notably did not delineate whether the agreement should be written and how specific the agreement must or should be to define the relationship. Regardless, construing this provision requires the office to heed the Supreme Court's instructions regarding statutory construction. "The fundamental purpose of statutory construction is to ascertain and give effect to the intent of the Legislature." Leo v. Oklahoma Water Res. Bd., 2023 OK 96, ¶ 17, 536 P.3d 939, 947 (citing Rickard v. Coulimore, 2022 OK 9, ¶ 5, 505 P.3d 920, 923). This requires an examination of the statute's language. Id. Here, the Nursing Act plainly requires an agreement between a physician and the CRNA to be in place. Nothing under section 567.3a(10)(h) expressly permits a CRNA to decide unilaterally without first consulting a collaborating physician. As stated under the definition of collaboration, the physician must either be "[(1)] performing the procedure, or [(2)] directly involved with the procedure." 59 O.S.2021, § 567.3a(10)(h). By mandating that the CRNA and collaborating physician must "jointly" arrive at a "common goal," a CRNA does not possess independent discretion when administering anesthesia or other drugs without a collaborating physician's assent.[4]

¶9 Counterintuitively, the impact of the change from supervision to collaboration falls more on practicing physicians than on CRNAs. Collaboration no longer includes a physician's duty to supervise CRNAs. Rather to comply with SB 801, a physician and a CRNA must formulate an agreement as described above. Thus, collaboration only removes a physician's duty to supervise and the change in the statutory language does not grant a CRNA any more allowance to practice independently from a physician than they had when the statute required supervision.
¶10 Your request next asked whether the collaborating physician must be directly involved in a patient's treatment plan. The plain language in SB 801's definition of "collaboration" demonstrates that the physician will be involved as described in this section. Without the physician's agreement and involvement, the treatment plan cannot be administered. Consequently, this office determines that an answer to this question is unnecessary as the answer is clear on the statute's face.

C. The collaborating physician is not required to supervise or provide supervision to the CRNA. The physician is, however, required to be available for timely onsite consultation.
¶11 As mentioned previously, the 2012 Opinion issued by this office construed section 567.3a(10) to require physician oversight of CRNAs. 2012 OK AG 21, ¶ 6. Once SB 801 became effective, language under section 567.3a(10) no longer included "supervision." As discussed above, the Legislature removed "supervision" and replaced it with "collaboration." Giving effect to the Legislature's intent in enacting SB 801 requires a reassessment of whether the 2012 Opinion accurately reflects the statutory change. This office concludes that it does not. Crucially, the 2012 Opinion and the new language under section 567.3a(10) conflict. As a result, SB 801's shift in the relationship means that physician oversight over a CRNA is no longer required under Oklahoma law.
¶12 A second part to your fourth question addressed the meaning of "timely onsite consultation." See 2012 OK AG 21, ¶¶ 8-12. The 2012 Opinion concluded that such consultation depends on the "medical scenario" and "implicates medical judgment." Id. ¶ 12. Although the Legislature replaced supervision with collaboration, it did not remove its mandate on the collaborating physician to be available for "timely onsite consultation." Because timely onsite consultation remains a requirement under section 567.3a(10), the 2012 Opinion's analysis concerning timely onsite supervision remains relevant. Accordingly, such analysis is hereby incorporated by reference.
¶13 It is, therefore, the official Opinion of the Attorney General that:

1. Oklahoma law governs the physician-CRNA relationship. Instead of modifying such relationship, the Governor's request for exemption letter to the Centers for Medicare and Medicaid Services from the physician supervision requirement under 42 C.F.R. § 482.52 removed federal regulatory constraints suppressing SB 801's uniform application. 
2. A CRNA must practice under a collaboration agreement as required by title 59, section 567.3a(10)(b, h), and therefore cannot practice independently.
3. The passage of SB 801 shifted the physician-CRNA relationship from supervision to collaboration. Consequently, physician "oversight" of CRNAs is no longer required as the term "supervision" encompasses oversight. See 
2012 OK AG 21, ¶ 6. To the extent that 2012 OK AG 21conflicts with this opinion, it is expressly withdrawn.
 
GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
ASHLEY N. YOUNGBLOOD
ASSISTANT ATTORNEY GENERAL

FOOTNOTES
[1] Letter of J. Kevin Stitt, Governor of Oklahoma, to Seema Verma, Administrator of the Centers for Medicare and Medicaid Services (Nov. 20, 2020) (on file with author). The Governor's Letter actually cited to the final rule in the Federal Register.
[2] Federal regulations establish the same physician-supervision requirement for critical access hospitals, 42 C.F.R. § 485.639 (2020), and ambulatory surgical centers, 42 C.F.R. § 416.42 (2020), to receive Medicare reimbursement for CRNAs who administer anesthesia. Both provisions have opt-out provisions identical to 42 C.F.R. § 482.52(c) (2008).
[3] See also Colorado Medical Society v. Hickenlooper, 2015 CO 41, ¶ 5, 349 P.3d 1133, 1135. In this case, the Colorado Supreme Court denied a challenge from medical groups opposing the same request for exemption letter sent by the state's governor to CMS. The court concluded that the Governor's attestation regarding consistency with state law only constituted his legal opinion and nothing more. Id. ¶¶ 15-16, 349 P.3d at 1137.
[4] Although the Nursing Act permits a CRNA to seek and receive authorization to order, select, obtain and administer anesthesia and drugs, this authorization does not remove the requirement that the CRNA must have an agreement with a collaborating physician to practice as a CRNA. With the authorization to order, select, obtain, and administer anesthesia and drugs, the CRNA may work directly with the physician performing the procedure. Without such authorization, the CRNA will likely work under an agreement with an anesthesiologist.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
2012 OK AG 21, 
Question Submitted by: Executive Director, Kim Glazier, RN, M.Ed., Oklahoma Board of Nursing
Discussed at Length

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2022 OK 9, 505 P.3d 920, 
RICKARD v. COULIMORE
Discussed

 
2023 OK 96, 536 P.3d 939, 
LEO v. OKLAHOMA WATER RESOURCES BOARD
Discussed

Title 59. Professions and Occupations

 
Cite
Name
Level

 
59 O.S. 567.3a, 
Definitions
Discussed at Length

 
59 O.S. 567.14, 
Practice without Conformity with Act
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA