OSCN Found Document:Question Submitted by: The Honorable Senator Rader and the Honorable Representative Kendrix

 

 
 Question Submitted by: The Honorable Senator Rader and the Honorable Representative Kendrix2026 OK AG 6Decided: 04/23/2026OKLAHOMA ATTORNEY GENERAL OPINIONS
Cite as: 2026 OK AG 6, __ P.3d __

 

ATTORNEY GENERAL OPINION

¶0 This office has received your requests for an Attorney General Opinion in which you ask, in effect, the following questions:

1. Does the Oklahoma Interventional Pain Management and Treatment Act (the "Pain Management Act"), , apply only to the treatment of "chronic" pain?

2. If the answer to question no. 1 is "yes," is it a violation of the Pain Management Act for a licensed Certified Registered Nurse Anesthetist ("CRNA") to perform radiofrequency ablation ("RFA") to treat "acute" pain or "acute exacerbation" of chronic pain?

3. Does the Pain Management Act authorize a licensed CRNA to perform peripheral nerve blocks or epidural steroid injections to treat pain? If so, would the Oklahoma Nursing Practice Act (the "Nursing Act"), 59 O.S.2021 & Supp.2025, §§ 567.1 -- 567.31, nevertheless prohibit the CRNA from performing such treatments? 

I.

SUMMARY

¶1 The Pain Management Act and the Nursing Act must be read together to determine a CRNA's scope of practice as it relates to pain management. First, the Pain Management Act applies only to the diagnosis and treatment of "chronic pain," as defined therein. Its restrictions do not extend to all forms of pain management. Additionally, CRNAs are not authorized to perform RFA procedures to treat pain under either statute. RFA procedures fall outside CRNAs' scope of practice authorized under the Nursing Act, and, under the Pain Management Act, RFA procedures are deemed to be the practice of medicine that can be performed only by a licensed allopathic or osteopathic physician. By contrast, peripheral nerve blocks and epidural steroid injections fall within CRNAs' scope of practice and therefore CRNAs may perform these procedures, subject to the limitations imposed by the Nursing Act and Pain Management Act.

II.

BACKGROUND

¶2 Your questions concern a CRNA's scope of practice under Oklahoma law, specifically the Nursing Act and the Pain Management Act. 

¶3 First, the Nursing Act categorizes and describes the various types of Advanced Practice Registered Nurses ("APRNs") authorized to practice in the State. See 59 O.S.Supp.2025, § 567See id. § 567.3a(10). Through its definitions section, the Nursing Act defines what a CRNA is and sets out his or her statutory scope of practice. In short, a CRNA is an APRN who maintains appropriate certification and is authorized to administer anesthesia. Id. With additional training, a CRNA may also "order, select, obtain, and administer" certain drugs, devices, and medical gases when engaged in specific anesthesia-related activities, namely "preanesthetic preparation and evaluation; anesthesia induction, maintenance and emergence; and postanesthesia care." Id. § 567.3a(10)(b). A CRNA may practice only "in collaboration with" a physicianId. § 567.3a(10)(a), (b). The nature of this "collaboration" is defined by statute: it refers to "an agreement between [the physician who is] performing . . . or directly involved with the procedure and the [CRNA] working jointly toward a common goal providing services for the same patient." Id. § 567.3a(10)(h). See 2024 OK AG 14

¶4 Second, the Pain Management Act imposes restrictions on the performance of certain interventional pain management procedures, including limitations applicable to CRNAs. See 59 O.S.2021, § 650any person to practice interventional pain management, as the statute defines it, except for Oklahoma-licensed allopathic or osteopathic physicians. Id. § 650(C). However, the Pain Management Act also explicitly provides that it "shall not be construed to forbid" pain management care by CRNAs in limited, and specifically identified, circumstances discussed below. Id. § 650(D). Understanding the interplay between the Pain Management Act and the Nursing Act is essential to determining the proper scope of a CRNA's practice for the procedures referenced in your questions.

III.

DISCUSSION

¶5 In interpreting the effect of a statute, this office is guided first by the plain meaning of the words chosen by the Legislature. Hall v. Galmor, 2018 OK 59427 P.3d 1052Id. However, where a subject matter is covered by two or more statutory schemes, the separate statutes are considered "as part of a coherent system, since different statutes on the same subject are generally to be viewed as in pari materia and must be construed as a harmonious whole." Stricklen v. Multiple Injury Tr. Fund, 2024 OK 1542 P.3d 858

1. The Pain Management Act applies only to the treatment of "chronic" pain. 

¶6 Your first question is answered by the plain language of the Pain Management Act. The Pain Management Act prohibits the practice of "interventional pain management" by anyone other than a licensed physician. 59 O.S.2021, § 650see also 2012 OK AG 21chronic pain," which is further defined as a "pain state which is subacute, persistent and intractable." 59 O.S.2021, § 650

2. Neither the Nursing Act nor the Pain Management Act permit CRNAs to perform radiofrequency ablation to treat "acute" pain or "acute exacerbation" of chronic pain. 

¶7 While your second question focuses on the Pain Management Act, its answer requires a broader look at a CRNA's scope of practice established by the Nursing Act. In essence, you ask under what circumstances a CRNA may perform RFA procedures. As explained in more detail below, the answer is that a CRNA may not perform RFA procedures at all, because such procedures fall outside a CRNA's authorized scope of practice under the Nursing Act and are not otherwise permitted by the Pain Management Act.

¶8 Under the Nursing Act, the practice of nursing includes, among other things, the "execution of the medical regime including the administration of medications and treatments prescribed by any person authorized by state law to so prescribe." 59 O.S.Supp.2025, § 567Id. § 567.3a(10)(b).

 

¶9 Anesthesia is not defined in the Nursing Act, but the term is commonly used for both the "loss of sensation" and for "an agent that produces anesthesia: anesthetic." Anesthesia, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/anesthesia (last visited Apr. 21, 2026). An anesthetic is more specifically defined as "[a] compound that reversibly depresses neuronal function, which produces loss of ability to perceive pain and/or other sensations." Anesthetic, STEDMAN'S MEDICAL DICTIONARY (27th ed. 2000). RFA is not the administration of anesthesia accompanying a medical procedure; it is the medical procedure itself, which aims to cause long-term alteration, or controlled damage, to the body. For example, the Cleveland Clinic describes the RFA procedure as follows:

Radiofrequency ablation (RFA), also called radiofrequency neurotomy, uses radio waves to create a current that heats a small area of nerve tissue. The heat destroys that area of the nerve, stopping it from sending pain signals to your brain. RFA can provide lasting relief for people with chronic pain, especially in the lower back, neck and arthritic joints.

¶10 Radiofrequency Ablation for Pain Management, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/treatments/17411-radiofrequency-ablation (last visited Apr. 21, 2026); see also Radiofrequency Ablation for Back and Neck Pain, HOSP. FOR SPECIAL SURGERY, https://www.hss.edu/health-library/conditions-and-treatments/radiofrequency-ablation (last visited Apr. 21, 2026).

¶11 Although the purpose of anesthesia and RFA may seem similar, the two are distinct in practice. Where an anesthetic temporarily "turns off" nerves with the expectation that they return to full function, RFA procedures deliberately damage those nerves to disrupt pain signals to the brain. While controlled nerve damage is the intended purpose of RFA procedures, it is a negative side-effect or risk associated with anesthesia. See Anesthesia, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/treatments/15286-anesthesia (last visited Apr. 21, 2026). In plain terms, a procedure that by design damages or destroys human tissue--for any reason--is not considered anesthesia and is therefore outside a CRNA's scope of practice authorized by the Nursing Act.

¶12 This conclusion aligns with the Pain Management Act, which classifies nerve ablation to treat chronic pain as the practice of medicine, which may be performed only by a licensed allopathic or osteopathic physician. 59 O.S.2021, § 650See, e.g., Long-lasting pain relief with radiofrequency ablation, MAYO CLINIC, https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/radiofrequency-ablation-pain-relief (last visited Apr. 21, 2026) ("To qualify [for an RFA procedure], patients need to have had chronic pain for more than six months and haven't found relief with conservative measures like medications, physical therapy or chiropractic care."). Thus, like the Nursing Act, the Pain Management Act does not permit CRNAs to perform RFA procedures.

¶13 To the extent the Pain Management Act references CRNAs at all, it is in subsection (D), which cautions that "[n]othing in [the Pain Management Act] shall be construed to forbid the administration of lumbar intra-laminar epidural steroid injections and peripheral nerve blocks by a [CRNA] when requested to do so" by, and under the supervision of, a licensed physician. 59 O.S.2021, § 650

¶14 In summary, nothing in the Nursing Act authorizes CRNAs to perform RFA procedures, and such procedures are regulated as interventional pain management under the Pain Management Act. Accordingly, CRNAs do not have statutory authorization to perform them.

3. A licensed CRNA may perform peripheral nerve blocks or epidural steroid injections to treat pain, subject to the limitations of the Nursing Act and Pain Management Act. 

¶15 Next, you ask, in essence, whether CRNAs are statutorily permitted to perform either peripheral nerve blocks or lumbar intra-laminar epidural steroid injections for the treatment of pain. As outlined above, the Nursing Act provides that a CRNA may administer anesthesia in collaboration with a physician. 59 O.S.Supp.2025, § 567

¶16 If there were any question of whether the Nursing Act permits CRNAs to perform peripheral nerve blocks or lumbar intra-laminar epidural steroid injections, the Pain Management Act is evidence that the Legislature intended them to be part of a CRNA's scope of practice. After all, why would the Pain Management Act make clear that it should not be construed to prohibit CRNAs from performing these procedures if the procedures were not part of a CRNA's accepted scope of practice under the Nursing Act? See 59 O.S.2021, § 650

¶17 The distinction drawn by the Legislature between permitted and prohibited procedures reflects meaningful differences in the nature of the interventions. Peripheral nerve blocks and lumbar intra-laminar epidural steroid injections are primarily medication-delivery techniques that produce temporary and reversible effects and are closely aligned with the administration of anesthesia. See, e.g., Anesthetic, STEDMAN'S MEDICAL DICTIONARY (27th ed. 2000) (defining anesthetic as "[a] compound that reversibly depresses neuronal function, which produces loss of ability to perceive pain and/or other sensations" (emphasis added). By contrast, procedures such as RFA involve highly targeted intervention, destruction or alteration of tissue, and a greater degree of medical judgment, with potentially permanent consequences. These differences support the Legislature's decision to limit such procedures to licensed physicians while allowing CRNAs to perform specified anesthetic-related techniques under physician supervision. 

¶18 It is, therefore, the official Opinion of the Attorney General that:

1. The Pain Management Act applies only to the treatment of chronic pain as defined in title 59, section 650 of the Oklahoma Statutes. 

2. CRNAs are not authorized to perform radiofrequency ablation because such procedures (i) fall outside the scope of practice authorized by the Nursing Act, and (ii) are not otherwise permitted by the Pain Management Act.

3. Properly licensed CRNAs in Oklahoma are permitted to perform peripheral nerve blocks and lumbar intra-laminar epidural steroid injections for the treatment of pain upon request, and under the supervision, of an Oklahoma-licensed allopathic or osteopathic physician.

 

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA

SCOTT A. MAY
ASSISTANT ATTORNEY GENERAL

FOOTNOTES

1 Nothing in this Opinion should be interpreted to limit the authority of the Oklahoma Board of Nursing ("OBN") or other appropriate licensing authorities to regulate professional conduct, establish standards of practice through rulemaking, or enforce applicable statutory and regulatory requirements, provided that such rules and enforcement actions are consistent with the governing statutes. Additionally, this Opinion does not purport to establish clinical standards of care or regulate the manner in which medical procedures are performed. It addresses only whether the applicable statutes permit CRNAs to perform the identified procedures under the circumstances described.

59 O.S.Supp.2025, § 567

See 2024 OK AG 14See 59 O.S.Supp.2025, § 567

Subacute, STEDMANS MEDICAL DICTIONARY (27th ed. 2000). However, for the purposes of construing the Pain Management Act, this office is bound to follow the statutory definition. See 25 O.S.2021, § 2

See, e.g., Our Anesthetic Techniques, HOSP. FOR SPECIAL SURGERY, https://www.hss.edu/departments/anesthesiology/our-anesthetic-techniques (last visited Apr. 21, 2026). "A peripheral nerve block involves injecting a local anesthetic (sometimes with a steroid) near a specific nerve or group of nerves outside the brain and spinal cord. These nerves control sensation and movement in the limbs, face, and other parts of the body." Precision Pain Relief: How Peripheral Nerve Blocks Help Treat Targeted Nerve Pain, COLUMBUS REG'L HEALTHCARE SYS., https://crhealthcare.org/treatments/peripheral-nerve-block/ (last visited Apr. 21, 2026).

Nerve Blocks and Steroid Injections: What's the Difference?, SOUTHERN PAIN CLINIC, https://southernpainclinic.com/blog/nerve-blocks-and-steroid-injections-whats-the-difference/ (last visited Apr. 21, 2026). "A lumbar epidural steroid injection (lumbar ESI) is an injection of anti-inflammatory medicine--a steroid or corticosteroid--into the epidural space around the spinal nerves in your low back." Lumbar Epidural Steroid Injection, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/treatments/22091-lumbar-epidural-steroid-injection (last visited Apr. 21, 2026). Healthcare providers use lumbar epidural steroid injections to temporarily manage chronic pain known as lumbar radicular pain caused by spinal nerve root inflammation. Id.

 and the physician. Compare 59 O.S.2021, § 650with 59 O.S.Supp.2025, § 567See 2024 OK AG 14 apply to CRNAs at all. See 59 O.S.Supp.2025, § 567Stricklen, 2024 OK 1only when requested by, and performed "under the supervision of," an Oklahoma-licensed physician. 59 O.S.2021, § 650See 2012 OK AG 21